COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


SHIRLEY MALAVE

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2708-98-4          JUDGE JAMES W. BENTON, JR.
                                         OCTOBER 19, 1999
FAIRFAX COUNTY DEPARTMENT
 OF FAMILY SERVICES


           FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Stanley P. Klein, Judge

         Elizabeth D. Teare (Surovell, Jackson,
         Colten & Dugan, P.C., on briefs), for
         appellant.

         Darrell D. Jackson, Assistant County Attorney
         (David P. Bobzien, County Attorney; Robert
         Lyndon Howell, Deputy County Attorney;
         Dennis R. Bates, Senior Assistant County
         Attorney, on brief), for appellee.

         Ronald C. Zabel, Guardian ad litem, for the
         minor child.


     Shirley Malave appeals from a decision terminating her

parental rights.  Malave contends the trial judge erred by

finding that the Fairfax County Department of Family Services

presented clear and convincing evidence (1) that she failed,

without good cause, to maintain contact with her child and plan

for his future for six months after his placement in foster

care; (2) that she failed, without good cause, to remedy

---

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

substantially within twelve months the problems leading to the child's placement in foster care; (3) that it was not reasonably likely the conditions which led to placing the child in foster care could be substantially corrected to allow his safe return within a reasonable period of time; and (4) that the Department adequately investigated placing the child with relatives.  We affirm the decision.

                                I.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial [judge] is the child's best interests."  Logan v. Fairfax County Dep't of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).  Thus, the following principles guide our review.

> "In matters of a child's welfare, trial [judges] are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests."  The trial [judge's] judgment, "when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Id. (citations omitted).

"Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth' . . . [and] 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family."  Lecky v.

                              - 2 -

Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995)

(citations omitted). Applying the provisions of that statute,

the trial judge ruled that the Department presented clear and

convincing evidence sufficient to terminate Malave's parental

rights under Code § 16.1-283, subsections (B)(1), (B)(2), (C)(1)

and (C)(2). Code § 16.1-283(B)(1) and (2) provide, in pertinent

part, that the parental rights of a parent of a child placed in

foster care, after a judicial finding of neglect or abuse, may

be terminated if the trial judge finds clear and convincing

evidence of the following:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to [the child's] life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to [the] parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Prima facie evidence of the conditions set out in Code

§ 16.1-283(B)(2) includes proof that the parent habitually

abused drugs "to the extent that proper parental ability has

been seriously impaired and the parent, without good cause, has

not responded to or followed through with recommended and

available treatment which could have improved the capacity for adequate parental functioning;" or that the parent, without good cause, failed to "respon[d] to or follo[w] through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child."

Code § 16.1-283(C)(1) and (2) provide that the parental rights of a parent whose child is in foster care may be terminated if the trial judge finds by clear and convincing evidence that the best interests of the child are so served and that the following circumstances exist:

> 1. The parent . . ., without good cause, [has] failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition; or

> 2. The parent . . ., without good cause, [has] been unwilling or unable within a reasonable period not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable

and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

The evidence established that Malave's son was placed in foster care in 1997, when he was ten years of age, after Child Protective Services found him wandering the streets on a Saturday morning. The previous Friday, no one came for the child at his school. The child could not give his last name, the name of his parent, or his address. The evidence proved that Malave resided in New York and that the child had lived with two of his maternal aunts in Virginia for two periods of time, most recently since the age of eight. By an order entered January 21, 1998, a judge determined that the child had been neglected. Malave failed to appear at that hearing. The trial judge entered the order terminating Malave's parental rights on November 4, 1998.

## I.   Failure to Maintain Contact

Proof that a parent, without good cause, failed to communicate on a continuing basis with a child in foster care for a period of six months is prima facie evidence of the grounds for termination under Code § 16.1-283(C)(1).  Malave admitted that she did not communicate by letter or telephone or visit with her son after he was placed in foster care in June 1997.  In an effort to explain her failure to visit her son, Malave testified that the social workers would not schedule visits for her.  Dawn Harvey, a social worker, testified, however, that although Malave requested visitation several times, Malave only requested those visits after a court hearing commenced and indicated that she was returning to New York shortly after the hearings.  Harvey testified that the visits could not be scheduled at such short notice.  Although Harvey offered to forward any cards or letters to the child, Malave never sent anything for the child.  The record supports the trial judge's finding that the Department presented clear and convincing evidence under Code § 16.1-283(C)(1) that Malave failed to maintain contact with the child for a period exceeding six months.

## II.   Failure to Remedy Problems Leading to Foster Care

Under the initial foster care plan, Malave was ordered to complete a parenting class and to undergo evaluations for mental health, drug, and alcohol use.  In February 1998, eight months

after entry of that order, Malave began a counseling program in New York. Malave was dismissed from the program because she failed to attend regularly and could not pay. The record indicates that Malave refused to work in a thrift shop as a means to cover the cost of the program. Malave presented evidence that she submitted an application to enter another program. She submitted that application, however, only one week before the October 1998 hearing. She admitted that she failed to attend parenting classes.

When questioned at trial, Malave admitted that she did not know what interests her child had. She said that "kids change" and that she only knew what interested him when he last lived with her in 1995.

Despite the passage of at least seventeen months, Malave failed to complete any of the requirements ordered by the trial judge or to demonstrate meaningfully a desire to reestablish a relationship with the child. Malave failed to complete any drug treatment program. Malave's explanation that she could not complete the program because one of her children contracted poison ivy and another sprained an ankle was found to be inadequate by the trial judge. The trial judge specifically noted that, until February 1998, Malave had taken "no action at all to try to do anything to rectify the situation, . . . that caused the initial placement, or caused the continuation of the placement."

The trial judge believed the testimony of the guardian <u>ad</u> <u>litem</u> and the social worker that Malave did not intend to comply with the requirements of the foster care plan because she did not wish to pursue custody. "It is clearly not in the best interest of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." <u>Kaywood v. Dep't of Soc. Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

We hold, therefore, that the record supports the trial judge's ruling that the Department established by clear and convincing evidence under Code § 16.1-283(C)(2) that Malave, without good cause, failed to remedy the conditions leading to the child's foster care placement.

### III. <u>Substantial Correction of Conditions</u>

Malave admitted that she used cocaine at the time the child was born and that she used cocaine on July 23, 1998. She also admitted that allegations of drug use resulted in the removal of three other children from her custody by New York protective services. While she denied that she continued to use drugs, the trial judge did not find her testimony to be credible.

The Department proved that Malave failed to follow through with appropriate, available, and reasonable rehabilitative efforts to prevent or eliminate the neglect. Therefore, we find no error in the trial judge's ruling that the Department proved by clear and convincing evidence under Code § 16.1-283(B)(2)

- 8 -

that the conditions which caused the neglect could not be substantially corrected within a reasonable period of time so as to allow the child's safe return to Malave.

## IV.  Placement with Relatives

"Before termination of parental rights by the court, the agency seeking termination has an affirmative duty to investigate all reasonable options for placement with immediate relatives."  Sauer v. Franklin County Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994).  However, the Department is not required "in every case to investigate the home of every relative . . . as a potential placement."  Id. at 771, 446 S.E.2d at 642.

According to Malave's testimony, the child lived with two of her sisters during the time he was in Virginia.  The record establishes that he was placed in foster care while in the custody of at least one of these aunts.  The trial judge noted that these aunts "were the same people who had allowed the child to be on his own . . . in a position where any ten-year-old or eleven-year-old child potentially could have been in grave danger."  The Department did not find either of those aunts to be suitable, and neither sought custody.

The Department investigated the possibility of placing the child with a third aunt.  Although that aunt initially sought custody, she later indicated she could not accept the placement because she already had other relatives in her care.  The social

workers testified that they also determined that this aunt could not meet the child's needs due to the number of other children in her care.  Therefore, the evidence supports the trial judge's conclusion that the Department adequately considered placement with relatives.

The trial judge found that termination of Malave's parental rights was in the child's best interests and that the Department presented clear and convincing evidence sufficient to meet the statutory requirements of Code § 16.1-283.  The record supports those findings.  Accordingly, we affirm the decision.

<u>Affirmed.</u>