COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, McCullough and Senior Judge Bumgardner

KENNETH STURGILL

MEMORANDUM OPINION[*]

v.      Record No. 0336-14-3     PER CURIAM
                                 JULY 8, 2014

WISE COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF WISE COUNTY
Tammy S. McElyea, Judge

(Charles Herbert Slemp, III; Slemp Law Office, PLLC, on brief), for
appellant.

(Karen T. Mullins; J. Brent Fleming, Guardian *ad litem* for the minor
child; Wise County Attorney's Office; Fleming & Collins, on brief),
for appellee.

Kenneth Sturgill (father) appeals an order terminating his parental rights to his child, H.S.

Father argues that the circuit court erred by (1) terminating his parental rights "when the child was

placed with a relative and a goal of relative placement is achievable and a less restrictive

alternative;" (2) terminating his parental rights and approving a permanency planning order because

father "was not involved in the preparation of a foster care plan that changed the goal from relative

placement to adoption of the child;" and (3) terminating his parental rights even though *res judicata*

applies because in the first trial, the circuit court "found that termination of parental rights is

impermissible if the child is placed with a relative," but in the second trial, the circuit court held

otherwise, despite the fact that the case involved the same parties and the same remedy was sought

in both cases.  Upon reviewing the record and briefs of the parties, we conclude that this appeal is

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Father has three children, M.S., D.S., and H.S. The Department of Social Services (the Department) removed the children from their parents' home in 2006. H.S. was two years old at the time of the removal. Initially, the Department's goal was relative placement, but it was later changed to termination of parental rights. The Department changed the goal again in order to give the parents additional time to complete services. The goal was to return the children home, which was done in May 2008 on a trial basis. The Department provided numerous services, but problems developed. The Department removed the children from the home and again filed petitions to terminate parental rights for all three children. The Wise County Juvenile and Domestic Relations District Court (the JDR court) approved the petitions. M.S. was in a non-relative foster home, whereas D.S. and H.S. were together in a relative placement. The parents appealed to the circuit court, which ultimately approved the plan to terminate father's parental rights to M.S. The circuit court denied the petitions to terminate father's parental rights to D.S. and H.S. because they were placed with a relative. Father appealed the termination ruling, as to M.S., to this Court, which summarily affirmed the circuit court's ruling. See Sturgill v. Wise Cnty. Dep't of Soc. Servs., Record. No. 1293-10-3 (Va. Ct. App. Mar. 21, 2011).

D.S. and H.S. continued in foster care in a relative placement until June 2010, when they moved into a therapeutic foster home. Father was incarcerated in 2010 and received an active

sentence of five and one-half years. Once he went to prison, the Department did not offer him any services.

The maternal grandparents petitioned for custody of D.S. The JDR court granted them custody, and D.S. was placed with them. Subsequently, the maternal grandparents petitioned for custody of H.S., who remained in their home for approximately six months. Due to behavioral problems, H.S. left their home in June 2012.

In October 2012, a family partnership meeting was held to discuss moving the child to other relatives. Father did not participate in the meeting because he was in prison. In November 2012, Tim and Brenda Anderson resumed custody of H.S.[1] In December 2012, the Department prepared a foster care plan with a goal of relative placement.

In March 2013, a social worker wrote appellant and asked him if he would agree to sign an entrustment agreement for H.S. The social worker explained that the Andersons wanted to adopt H.S. If father did not agree to sign the entrustment agreement, then the Department would file a petition to terminate his parental rights. Father's attorney communicated with the Department and told them that father would not sign the entrustment agreement.

In June 2013, the foster care plan was changed to adoption. In July 2013, the Department filed a petition to terminate father's parental rights. On August 20, 2013, the JDR court terminated father's parental rights to H.S. and approved the foster care plan with the goal of adoption. Father appealed to the circuit court.

On January 10, 2014, the circuit court heard evidence and argument. At the conclusion of the Department's evidence, father made a motion to strike, which was denied. Father testified and discussed the numerous programs he completed while in prison. He also notified the circuit court that his expected release date was January 2015. He admitted that he could not take

---

[1] H.S. had previously been placed in the Andersons' home.

custody of H.S. immediately upon his release from prison and asked for some time. After presenting his evidence, he renewed his motion to strike, which was denied. The circuit court terminated father's parental rights pursuant to Code § 16.1-283(E)(i)[2] and approved the foster care plan with the goal of adoption. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

*Assignment of error #1*

Father argues that the circuit court erred by terminating his parental rights because the child was placed with relatives and relative placement is an alternative to termination of parental rights.

Prior to terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such

---

[2] The residual parental rights of a parent or parents of a child who is in the custody of a local board . . . may be terminated by the court if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . .

Code § 16.1-283(E)(i).

relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465. "Before termination of parental rights by the court, the agency seeking termination has an affirmative duty to investigate all reasonable options for placement with immediate relatives." Sauer v. Franklin Cnty. Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994) (citations omitted).

Here, the Department had been working with the family for years. H.S. had been in foster care for almost eight years by the time the circuit court heard this termination case. Over the years, the Department had placed H.S. with various relatives and foster homes. It tried to place H.S. in the same home as D.S. with their maternal grandparents; however, due to behavioral problems, H.S. had to be removed from the home. The Andersons, who previously had custody of H.S., agreed to take H.S. back into their home, but sought a permanent solution for H.S.

Contrary to appellant's argument, the Department sought many alternative placements for H.S. In 2013, the Department found a permanent placement for H.S. with the Andersons, who wanted to adopt him. Father's incarceration prevents him from being able to assume custody of H.S. now or in the near future. The circuit court held that it was in the child's best interests to have a permanent placement with the Andersons, especially considering the length of time that the child has been in foster care.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The circuit court did not err in terminating father's parental rights and approving the foster care plan of adoption.

*Assignment of error #2*

Father argues that the circuit court erred in terminating his parental rights because the Department did not involve father in the foster care plan as required by Code § 16.1-281(A), which states:

> The representatives of such department or agency shall involve the child's parent(s) in the development of the plan, except when parental rights have been terminated or the local department of social services or child welfare agency has made diligent efforts to locate the parent(s) and such parent(s) cannot be located, and any other person or persons standing in loco parentis at the time the board or child welfare agency obtained custody or the board placed the child.

Although the Department did not offer father any services while he was in prison and did not meet with him to discuss the foster care plan, he was involved in the process. Father received notice of all of the Department's plans regarding H.S., and he participated in the JDR court's proceedings and the circuit court's proceedings when the plans were discussed. His attorney advised him of developments with the case. A social worker contacted father in March 2013 to ask him to sign an entrustment agreement. The social worker also advised father that if he did not sign the entrustment agreement, then the Department was seeking to terminate his parental rights. Father's counsel met with father to review the Department's letter. Father's counsel advised the Department that father refused to sign the entrustment agreement, so the Department filed a petition to terminate his parental rights in July 2013. The circuit court noted that the Department "made an effort to involve the parent" and wrote him about the plan for adoption. The circuit court explained that "[o]n its face, the plan indicates the parent was involved." Father "was aware of the change in goal" and "had the ability through his counsel if he wished to have input with regard to the contents of this letter to do so." The circuit court also acknowledged that father's involvement was "limited" due to his incarceration. Father's rights were not violated pursuant to Code § 16.1-281. Based on the record, the circuit court did not err

in determining that the Department complied with its statutory obligation to involve father in the foster care plan.

*Assignment of error #3*

Father argues that the circuit court erred in terminating his parental rights to H.S. because "the issue presented herein is precluded from relitigation based upon the doctrine of res judicata."

Father contends the Department previously sought to terminate father's parental rights, but the circuit court denied the petition in 2010 because the child was in a relative placement. Father asserts that the same facts apply to this situation because it is the same parties, the same cause of action, and the same remedies sought.

> In actions commenced after July 1, 2006, Rule 1:6 governs claims of res judicata, stating in pertinent part:
>
> "A party whose claim for relief *arising from identified conduct, a transaction, or an occurrence*, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action *that arises from that same conduct, transaction or occurrence* . . . ."

Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 375, 428, 719 S.E.2d 329, 355 (2012) (emphasis added in original).

In 2010, the Department sought to terminate father's parental rights to his children pursuant to Code § 16.1-283(B) and (C). In 2014, the Department sought to terminate father's parental rights to H.S. pursuant to Code § 16.1-283(E)(i). Although the ultimate remedy of termination of parental rights is the same, the reason for seeking the termination has changed. Therefore, the two matters are different.

Furthermore, the circumstances have changed since 2010. Unlike the previous situation in 2010 when H.S. was living with relatives, H.S. is now in a placement with the Andersons,

who "happen to be relatives, but they are not willing to be a permanent placement other than through adoption." The Andersons told the Department that they were only willing to care for H.S. by adopting him because they previously tried a custodial situation, but it did not work. As the circuit court noted, H.S. "deserves permanency and security." Since 2010, H.S. has been in several homes and has had behavioral issues. The circuit court explained, "To leave [H.S.] in foster care even if the Anderson's [sic] were willing to accept that type of a situation does not solve a lot of the issues that [H.S. has] encountered over the years that have led to deteriorating behavior, [sic] that have led to him having difficulties."

Accordingly, the doctrine of *res judicata* does not apply. The evidence proved that termination of father's parental rights to H.S. was in the child's best interests, and the circuit court did not err by approving the Department's petition and foster care plan.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>